UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
.
LAWRENCE HOWARD, JR.,                    .
                                         .
                    Plaintiff,           .    CIVIL ACTION NO. 04-11169(REK)
                                         .
              v.                         .
                                         .
AMERICAN OVERSEAS MARINE                 .
CORPORATION,                             .
                                         .
                    Defendant.           .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION

## FOR PROTECTIVE ORDER

Plaintiff's Motion for Protective Order seeks to prevent Defendant from asking questions at Plaintiff's deposition, or otherwise seeking to obtain through discovery, information concerning Plaintiff's employment with the National Railroad Passenger Corporation ("Amtrak"), as well as an employment discrimination charge that he filed against Amtrak. Plaintiff's Motion must fail.  He raises confidentiality as the primary basis for his objection, citing a settlement with Amtrak, but has never disclosed the terms of the agreement to Defendant.  As a result, Defendant is unable to respond to his confidentiality claims.  Moreover, the relevance objection is baseless.  Indeed, Plaintiff's counsel's instruction to his client not to answer questions at Plaintiff's deposition was cast so broadly that it consumed relevant areas of inquiry even under Plaintiff's own assertions concerning relevance.  Accordingly, Plaintiff's Motion should be denied.

**A.    Defendant is Unable to Respond to Plaintiff's Confidentiality Objection.**

Plaintiff's counsel has made it impossible for Defendant to respond intelligently to his confidentiality objection by failing to disclose the confidentiality provision upon which he relies. Plaintiff's counsel has represented that there exists a confidentiality agreement between Plaintiff and Amtrak that precludes the release of any information related to Plaintiff's lawsuit. But Plaintiff's counsel never pointed to any particular provision in the Amtrak settlement as a basis for his confidentiality objection, and never provided Defendant with a copy of any such provision. Without such information, Defendant has been unable to respond to Plaintiff's confidentiality claims. Plaintiff's Motion presents the same dilemma.

Plaintiff, at a minimum, should have attached to his motion *that portion* of the Amtrak settlement that he asserts requires complete confidentiality. Plaintiff's invitation to allow the Court to conduct an *in camera* inspection of the settlement does nothing to rectify the central problem, that Plaintiff is frustrating Defendant's ability to respond to his objection. Many if not most such settlements contain provisions allowing for the release of information in pre-trial discovery, or as ordered by a court, or if protected by a confidentiality agreement. Here, Plaintiff and Defendant signed a Confidentiality Agreement at the start of discovery. See Exhibit 1. As things now stand, however, there is simply no way of knowing what exceptions there might be to the confidentiality agreement Plaintiff's counsel claims to exist, because Plaintiff has kept Defendant in the dark, and continues to do so now through his Motion. As such, Plaintiff's Motion is fundamentally flawed and the Court should deny it.

In any event, even if the Amtrak settlement contains no exceptions to the alleged confidentiality provision, the Court still has the authority to order the release of the information.

B3050749.2                                          -2-

See <u>Bennett v. La Pere, M.D.</u>, 112 F.R.D. 136, 140 (D.R.I. 1986) (litigants seeking to maintain the confidentiality of settlement agreements through boilerplate language cannot shield such agreements from disclosure during the "rigors of pretrial discovery" without offering "good cause or sound reason sufficient to defeat discovery"). Thus, a blanket confidentiality provision will not act as a barrier to an order that compels the disclosure of the Amtrak agreement and allows questioning concerning Plaintiff's employment at Amtrak.

**B.    Plaintiff's Counsel's Instruction Not to Answer is Improper Because Plaintiff's Employment With, and Claim Against, Amtrak is Relevant to this Case.**

Plaintiff's total reliance on <u>E.I. Malloy v. Wang Laboratories, Inc.</u>, 95 F.R.D. 488 (D.Mass. 1982) for his relevance objection is misplaced, as that case is distinguishable. First, the discovery at issue there was wholly speculative. The Defendant Wang persisted in asking questions about other lawsuits even after having been informed by Plaintiff's counsel that no such lawsuits existed. <u>Id.</u> at 489-90. As such, Wang had no basis to assert the relevancy of such lawsuits to its case, and the Court could properly characterize it as a fishing expedition. Here, by contrast, Defendant is not fishing for information about any number of unknown lawsuits, but is instead well aware of a single claim filed against Amtrak. Thus, Defendant is seeking to inquire about only one claim the existence of which is not in dispute. The entire inquiry would likely take less time than it will take plaintiff's counsel to read this opposition. Further, Plaintiff already testified at deposition that he left Amtrak because "we had a disagreement." (Exhibit 2, Deposition Transcript at 230:5-6.) The fact that Plaintiff acknowledged a disagreement with a former employer that led to his departure raises the specter of workplace conflict which, if borne out, is relevant to the claims of such conduct by the Plaintiff in this case and the Plaintiff's denial

of those claims, particularly where the decision to terminate in this case concerned such conduct. Finally, the instruction not to answer in this case casts a far broader net than the refusal to answer questions in E.I. Malloy. Nothing in E.I. Malloy suggests that Defendant should be precluded from inquiring into "any issues that [Plaintiff] had during his employment at Amtrak."

Plaintiff's counsel's instruction was inappropriate not only because he sought to bar questions concerning Plaintiff's claim against Amtrak, but also because he prevented Defendant from eliciting a wide array of other information about Plaintiff's employment with Amtrak. It is important to clarify that the instruction not to answer Plaintiff received from his counsel at the deposition was broader than that represented in his Motion for Protective Order. In his Motion, Plaintiff characterized his instruction as prohibiting questions concerning the claim, its resolution and the factual circumstances that gave rise to the claim. (Motion at ¶ 7.) However, at Plaintiff's deposition, counsel instructed his client not only to avoid inquiries concerning his claim against Amtrak, but also not to answer any questions concerning:

> any reasons for him leaving Amtrak. . . [and] . . . *any issues that he had during his employment at Amtrak.*

(Exhibit 2, Deposition Transcript at 230:13-21) (emphasis added). Plaintiff's counsel left little else to inquire about, offering only the opportunity to explore "what his job duties were and the like." Id.[1]

---

[1]   Likewise, Plaintiff's Motion incorrectly characterizes the questions that Defendant reserved with respect to Amtrak as "only concerning the areas where undersigned counsel had instructed Plaintiff not to answer." (Motion at ¶ 9.) To clarify, Defendant never made any such reservation, but instead merely suspended pending the outcome of Plaintiff's Motion. (Exhibit 2, Deposition Transcript at 232:24-233:2.) There was no reason for Defendant to make any inquiries into Plaintiff's employment at Amtrak until the Plaintiff's broad instruction and expected Motion had been considered and decided by the Court, as this undoubtedly would have resulted in a lengthy and inefficient series of questions, objections and partial answers, all of which would have to be revisited after the Court ruled on the instant Motion.

Plaintiff's counsel's broadly cast instruction not to answer is simply not defensible under the Federal discovery standards, because it brings within its sweep matters that are clearly relevant to this case. Indeed, it is well-settled that the during pretrial discovery, relevance is considered to be an "elastic concept" and is broadly and liberally construed. Bennett v. La Pere, 112 F.R.D. at 138 (citing, United States v. Tierney, 760 F.2d 382, 387-88 (1st Cir. 1985); Hickman v. Taylor, 329 U.S. 495, 507 (1947)); See, also, United States v. Mass. Indus. Fin. Agency, 162 F.R.D. 410, 414 (D.Mass. 1995) ("As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any probability that it might be relevant to the subject matter of the action").

Under this broad standard, Plaintiff's claim against Amtrak and his employment with Amtrak are relevant. Plaintiff's stated, albeit truncated, reason why he stopped working at Amtrak is potentially relevant to the assertion by Defendant in this case concerning the reasons for termination. According to Plaintiff, he stopped working at Amtrak because "we had a disagreement." (Exhibit 2, Deposition Transcript at 230:5-6.) If Plaintiff had disagreements with Amtrak and his supervisors, then inquiries into those disagreements may lead to admissible evidence concerning the extent to which Plaintiff got along with supervisors and/or was insubordinate. It was disrespectful and insubordinate behavior, and assault of a supervisor, that Defendant states, and Plaintiff denies, was the basis for his termination in this case. Thus, there is no basis for preventing Defendant from inquiring into those matters relating to his employment by Amtrak.

Further, Plaintiff's resume reflects that he worked for Amtrak continuously from 1993 through 2001. (Exhibit 3, Deposition Exhibits 21 and 22.) Defendant should be allowed to explore that employment history, particularly where it was the only job of significant duration

that Plaintiff held immediately preceding his employment with Defendant. His eight years of employment at Amtrak may be relevant for purposes of assessing the competing claims in this case of what took place during his employment with Defendant, some of which concern his alleged disrespect for managers and insubordinate behavior. It is significant that Plaintiff's employment with Amtrak apparently extended well beyond 1994, the year Plaintiff's Motion identifies as the date that Plaintiff filed his claim against Amtrak. (Motion at ¶ 3.)[2] If Plaintiff's Amtrak settlement was signed in 1994, then even if the Court were to accept Plaintiff's position that inquiry into the claim is improper, there is no basis whatsoever to deny Defendant the opportunity to question Plaintiff about the remaining seven years of his employment at Amtrak.

It is interesting to note that Plaintiff's counsel raised no objection to questions about other employers for whom Plaintiff had previously worked. (Exhibit 5, Deposition Transcript at 227:21-232:19). That fact alone refutes Plaintiff's assertion that questions about his Amtrak job are irrelevant. Indeed, it is commonplace in employment litigation (if not all litigation) for a plaintiff to be questioned about his job history. The mere fact that a claim had been filed against Amtrak at some point during Plaintiff's tenure does not bar all inquiry into that employment history. There are numerous reasons why Plaintiff's employment at Amtrak is relevant under the Court's liberal pretrial discovery standards, including not only liability issues but also questions of lost earnings and other damages.

Finally, the fact that Plaintiff asserted a claim of race discrimination against Amtrak and does not have such a claim in this case is unavailing. As discussed above, there are numerous

---

[2] It is unclear when Plaintiff actually filed his claim against Amtrak because his Motion states 1994 but Plaintiff's Interrogatory Answers state that Plaintiff "brought a claim for racial discrimination in employment against Amtrak in or around 1996." (Exhibit 4, Plaintiff's Interrogatory Answers - Answer No. 8.)

-7 -

reasons independent of the manner in which Plaintiff has couched his claim which militate in favor of discovery.  Moreover, even in the absence of a count alleging race discrimination, race has been a part of this case.  In the MCAD administrative filing that preceded the instant lawsuit, Howard <u>did</u> allege race discrimination.  And his retaliation claim is premised on another alleged incident of race discrimination.  Thus it is disingenuous for Plaintiff's counsel to claim that the Amtrak case is completely unlike this case because that case alleged race discrimination.

Accordingly, Defendant requests that Plaintiff's Motion for Protective Order be denied; that the Court order Plaintiff to answer deposition questions and interrogatories about his employment with Amtrak, as well as the claim that he filed; and that the Court order plaintiff to produce all of the documents he has withheld, despite Defendant's request, on these issues.

Respectfully submitted,

American Overseas Marine Corporation
By its attorneys,


  s / Scott C. Merrill
James W. Bucking, BBO #558800
Scott C. Merrill, BBO #631008
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated:  June 23, 2005