**EXHIBIT 2**

```
 1                    VOLUME: I
                      PAGE:  1-76
 2                    EXHIBITS: 1-23
            UNITED STATES DISTRICT COURT
 3            DISTRICT OF MASSACHUSETTS

 4                      CIVIL ACTION
                       NO. 04-11169REK
 5

 6          _____
                                      x
 7      LAWRENCE HOWARD JR.,          x
             Plaintiff               x
 8                                    x
                                      x
        VS.                           x
 9                                    x
        AMERICAN OVERSEAS MARINE      x
10      CORPORATION,                  x
             Defendant                x
11          _____x

12

13          DEPOSITION OF RICHARD WILLIAMSON,
        taken pursuant to the applicable
14      provisions of the Massachusetts
        Rules of Civil Procedure, before
15      Marjorie L. Simmons, Court Reporter
        and Notary Public in and for the
16      Commonwealth of Massachusetts,
        held at the Law Offices of Paul Wood, 45
17      Bowdoin Street, Boston, Massachusetts,
        on Tuesday, June 14, 2005, commencing at
18      10:15 a.m.

19

20

21

22          _____
                     REPORTERS INC.
        GENERAL & TECHNICAL COURT REPORTING
23      23 MERRYMOUNT ROAD, QUINCY, MA. 02169
        617.786.7783/FACSIMILE 617.786.7723
24
```

1    was a  -- we were going to be discharging

2    one of the seafarers people.  It was an

3    intradepartmental issue going on, they

4    might want to be present.

5  Q.  To the best of your knowledge, sir, what

6    was Captain Mahoney's initial response to

7    the allegations that Mr. Howard had

8    assaulted Miss Vaupel?

9  A.  I believe he talked to Miss Vaupel, asked

10    her for statements.  We talked on the

11    phone.  He asked me for advice on it.  I

12    supported his -- the fact that he wanted

13    to get statements.  Please get all of the

14    statements you can, captain, and he

15    informed me that he had intended to

16    discharge him.  He also tried to take

17    photographs of the bruises.

18  Q.  As master of the Button would Captain

19    Mahoney have had the authority to confine

20    Mr. Howard to his quarters?

21  A.  Yes.

22  Q.  To your knowledge, sir, was Mr. Howard

23    confined to his quarters?

24  A.  Not to my knowledge.

1    Q.    Why was he not confined to his quarters?

2    A.    I do not know.

3    Q.    You testified earlier that Captain

4          Mahoney contacted you concerning the

5          alleged assault.  Please tell me

6          everything you did, sir, after being

7          informed of this information, of this

8          allegation?

9    A.    I advised Captain Mahoney to take

10         statements. I advised him to contact the

11         local union hall.  He made the local

12         union call in Jacksonville requesting

13         that one of their representatives meet

14         the vessel at Jacksonville.

15   Q.    Did you take any other action?

16   A.    None that I recall.

17   Q.    Did you contact any type of law

18         enforcement agency?

19   A.    No, I did not.

20   Q.    Did you contact the U.S. Coast Guard?

21   A.    No, I did not.

22   Q.    Why did you not do so?

23   A.    Because the situation was in hand

24         according to Captain Mahoney.  Mr. Howard

1   A.   No.

2   Q.   When was the last time you spoke with Miss

3        Vaupel?

4   A.   I actually spoke to her three days ago

5        when she called the office wondering about

6        the date of her return to the M/V Bobo.

7        Several days ago, I don't know the exact

8        time.

9   Q.   I am sorry, when was the last time you

10       spoke with Miss Vaupel concerning

11       Mr. Howard?

12   A.   On the phone with Mr. Bucking.

13   Q.   Any other time?

14   A.   No.

15   Q.   Okay.  To the best of your/AMSEA's

16       knowledge, were there any disciplinary

17       issues with Mr. Howard on the M/V Button

18       prior to Miss Vaupel coming aboard as

19       chief steward?

20   A.   To the best of my knowledge, no.

21   Q.   To the best of your/AMSEA's knowledge,

22       were there any disciplinary issues with

23       Miss Hawkins on the M/V Button prior to

24       Ms. Vaupel coming aboard?

1    A.    To the best of my knowledge, no.

2          MR. WOOD:  Can you mark this as

3    Exhibit No. 22 please.

4          (Exhibit 22, Performance report,

5          Marked for identification.)

6

7    Q.    I show you what has been marked as Exhibit

8    No. 22.  I ask you to take a look at it.

9    A.    Yes. Okay.

10   Q.    Have you seen what has been marked as

11   Exhibit No. 22 previously, sir?

12   A.    Yes.

13   Q.    And what is Exhibit No. 22?

14   A.    It is a performance report written by the

15   master on Lawrence Howard.

16   Q.    What is a performance report?

17   A.    It is a review of somebody's capabilities

18   and performance while working aboard a

19   vessel.

20   Q.    And where are the performance reports

21   kept?

22   A.    This is an electronic document.  This is

23   done in personnel database.  This is a

24   printout of that file.

1  Q.   So this would be part of Mr. Howard's

2       personnel file?

3  A.   Correct.

4  Q.   Okay.  And are these reports shared with

5       anyone outside of AMSEA?

6  A.   No, they are not.

7  Q.   Okay.

8  A.   Generally no.

9  Q.   When you say "generally" what do you mean

10      by that?

11 A.   If there were disciplinary proceedings

12      against somebody with their union they may

13      be shared at that time.

14 Q.   At any time, sir, did you and again by

15      "you" I mean AMSEA, been in communications

16      with Mr. Howard's union concerning

17      Mr. Howard?

18 A.   Yes.

19 Q.   When was the first such communication?

20 A.   When I called the SIU in Jacksonville on

21      approximately October first.

22 Q.   Who did you speak to?

23 A.   Mr. Steve Ruiz.

24 Q.   To the best of your recollection what did

1   Q.   Okay.  Fair enough.

2            MR. WOOD: Let's take a five-minute

3        break.

4            {Off the record.}

5   Q.   Just a couple more questions, sir. I

6        apologize if I have asked you this

7        previously, did AMSEA in fact contact the

8        Coast Guard concerning the alleged assault

9        by Mr. Howard on Ms. Vaupel?

10  A.   No.

11  Q.   Is the reason for that, sir, that the

12       alleged assault was not reported in the

13       ship's log?

14           MR. BUCKING:  Objection.

15  A.   The -- I don't know the reason for that,

16       why the captain did not report it.

17  Q.   Was the assault in fact reported in the

18       ship's log?

19  A.   To my knowledge it was not.  I did not see

20       it in the ship's log.

21  Q.   Regarding the alleged assault by

22       Mr. Howard, you testified earlier that

23       there were two witnesses to the assault

24       who gave statements, is that correct, sir?

1

## WITNESS SIGNATURE PAGE

2

3

4       I, RICHARD WILLIAMSON, do hereby
certify that I have read the forgoing
transcript of my testimony, and further
5   certify that said transcript is a true and
accurate record of said testimony, subject
6   to the attached errata sheet.

7
Dated this ___9___$^{7H}$ day of ___AUGUST___,
8   2005.

9

10

11   _____
                RICHARD WILLIAMSON

12

13

14

15   Read and subscribe to before me this _____

16   day of _____, 2005.

17

18

19

20

21   Notary Public

22   My commission expires:

23

24

## DEPOSITION OF RICHARD WILLIAMSON

<u>Lawrence Howard Jr. v. American Overseas Marine Corporation</u>, CA No. 04-11169REK
Boston, MA
June 14, 2005

## ERRATA SHEET

I, RICHARD WILLIAMSON, do hereby certify that I have read the transcript of my testimony in the above-referenced matter given on June 14, 2005 and further certify that it is a true and accurate record of my testimony (with the exception of the corrections listed below):

| Page | Line(s) | Change From | Change To | Reason |
|------|---------|-------------|-----------|--------|
| 28 | 1 | "want to define it as a" | "want to define" | Clarification |
| 30 | 18-19 | "when he had been notified by officer of the assault" | "when he had notified the office of the assault" | Transcription Error |
| 36 | 10-14 | "I advised him to contact the local union hall. He made the local union call in Jacksonville requesting that one of their representatives meet the vessel in Jacksonville." | "I advised him that I would contact the local union hall in Jacksonville requesting that one of their representatives meet the vessel in Jacksonville." | Transcription Error |
| 52 | 9 | "have none in opposition." | "have none in our possession." | Transcription Error |

Date: 8/11/05

Richard Williamson