UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAWRENCE HOWARD, JR.,
Plaintiff

v.

AMERICAN OVERSEAS MARINE CORPORATION,
Defendant

CIVIL ACTION
NO. 04-11169-REK

**Memorandum and Order**
December 14, 2005

## I. Pending Matters

Pending for decision are matters related to the following filing:

(1) Defendant's Motion for Summary Judgment (Docket No. 21, filed October 14, 2005).

## II. Factual and Procedural Background

Plaintiff Lawrence Howard, Jr. was employed by defendant American Overseas Marine Corp. ("AMSEA") on a merchant marine vessel, the Motor Vessel Button ("Button"). Plaintiff was employed as the Chief Cook on the Button, where he was supervised by Chief Steward Nancy Vaupel and assisted by Steward Assistants, one of whom was Avis Hawkins. Plaintiff alleges that, as the Button sailed to the Middle East in mid-2003, during the early stages of the Iraq War, he was subjected to unwanted and offensive sexual harassment by Ms. Vaupel. Ms. Vaupel allegedly told plaintiff on numerous occasions that she was interested in a "private

relationship" with him. Her alleged sexual conduct toward plaintiff also included telling him that she liked making love under candles, stating that she wanted to make love to him in her bedroom, inviting him up to her room, and rolling a piece of bread dough into the shape of a penis and asking plaintiff how he liked it. Plaintiff alleges that this conduct led him to complain to Captain Michael Mahoney, who spoke with Ms. Vaupel about the incidents.

In order to stop Ms. Vaupel's advances, plaintiff told Ms. Vaupel that he was romantically involved with Ms. Hawkins. Ms. Vaupel then allegedly became critical of Ms. Hawkins and treated her in a disparaging manner. On September 14, 2003, plaintiff delivered a memorandum to Ms. Vaupel and Captain Mahoney regarding her treatment of Ms. Hawkins. Ms. Vaupel then allegedly stated that she intended to get even with plaintiff and Ms. Hawkins for their actions toward her.

On October 1, 2003, Ms. Vaupel reported to Captain Mahoney that plaintiff had hit her. On October 2, 2003, Captain Mahoney and Seafarers International Union ("SIU") representative Steve Ruiz allegedly requested that plaintiff withdraw the memorandum regarding Ms. Vaupel's treatment of Ms. Hawkins. On October 3, 2003, plaintiff was terminated. He then allegedly threatened to cut the throat of Mr. Ruiz, who responded by filing charges with the Seafarers Appeals Board ("SAB"). Defendant also filed charges against plaintiff before the SAB for the alleged assault of Ms. Vaupel. On November 10, 2003, plaintiff, defendant, and the SIU signed an agreement pursuant to which plaintiff's discharge would be by reason of mutual consent, defendant would pay plaintiff's transportation, and the charges before the SAB would be withdrawn.

Plaintiff alleges that the reasons proffered for his termination were false and a

pretext for unlawful discrimination and retaliation for his refusal to enter into a romantic relationship with Ms. Vaupel. Defendant alleges plaintiff's termination was due to his assault on Ms. Vaupel and his previous disrespectful behavior toward her. Plaintiff filed this action on June 2, 2004. (Docket No. 1.) He brings two counts, the first based on Title VII of the 1964 Federal Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000(e) et seq., and the second based on Mass. Gen. Laws ch. 151B ("Chapter 151B"). Both counts allege that plaintiff was subjected to discrimination on the basis of his sex that had the purpose or effect of unreasonably interfering with his work performance or creating an intimidating, hostile, or offensive working environment and that constituted quid pro quo harassment. Both counts also allege that plaintiff was subjected to retaliation in violation of both laws. Plaintiff demands compensation for his injuries, as well as punitive damages, interest, reasonable attorney's fees, and litigation costs.

Defendant filed its original answer on August 10, 2004. (Docket No. 5.) Defendant then filed two motions to amend, both of which I granted. (Docket Nos. 12 and 14.) Defendant's amended answer raises fifteen defenses: (1) defendant's denial of allegations; (2) plaintiff's failure to state a claim upon which relief may be granted; (3) plaintiff's failure to exhaust administrative remedies; (4) doctrine of accord and satisfaction; (5) defendant's good faith and legitimate business reasons; (6) plaintiff's waiver and/or release of claims; (7) defendant's actions were not the proximate cause of any injury; (8) plaintiff's estoppel by his own actions; (9) plaintiff's discharge was for cause; (10) plaintiff's failure to mitigate damages; (11) plaintiff's failure to state a cognizable claim under Mass. Gen. Laws ch. 151B; (12) doctrine of laches; (13) doctrine of unclean hands; (14) plaintiff's threats to a union representative aboard defendant's vessel; and (15) plaintiff's retaliation claims are preempted by the National Labor

Relations Act ("NLRA").

On June 9, 2005, plaintiff filed a Motion for a Protective Order, requesting that defendant and its counsel be prohibited from inquiring and otherwise seeking deposition testimony and other discovery from plaintiff concerning his prior administrative action against the National Railroad Passenger Corporation ("Amtrak"). (Docket No. 17.) I denied this motion at the hearing on October 4, 2005, and ordered plaintiff to produce his settlement agreement with Amtrak after defendant had given notice of production to Amtrak.

On October 14, 2005, defendant filed a Motion for Summary Judgment. (Docket No. 21.) Plaintiff filed his opposition to this motion on November 4, 2005.

## III. Analysis

### A. Summary Judgment Standard

Summary judgment should be granted only where the court, viewing the evidence in the light most favorable to the non-moving party, determines that no genuine dispute of material fact exists. See Fed. R. Civ. P. 56. The moving party has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record showing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Then the non-moving party must demonstrate that "*every essential element* of its claim or defense is at least trialworthy." Price v. General Motors Corp., 931 F.2d 162, 164 (1st Cir. 1991) (italics in original). A dispute is genuine if it "may reasonably be resolved in favor of either party." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Facts are "material" if they possess "the capacity to sway the outcome of litigation under applicable

law." Id. The facts in genuine dispute must be significantly probative in order for summary judgment to be denied; "conclusory allegations, improbable inferences, and unsupported speculation will not suffice." Id.

**B. Preemption by the National Labor Relations Act**

**1. Introduction**

Defendant argues that plaintiff's retaliation claims are preempted by the NLRA, 29 U.S.C. §§ 151 et seq., which establishes the National Labor Relations Board ("NLRB") as the exclusive forum for complaints alleging violations of the NLRA. The Supreme Court articulated the doctrine for NLRA preemption in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), and this doctrine has been understood by the First Circuit as meaning that "when an activity is arguably subject to § 7 or § 8 of the National Labor Relations Act, the states as well as the federal courts must defer to the exclusive competence of the NLRB if the danger of state interference with national labor policy is to be averted." Chaulk Services, Inc. v. Massachusetts Commission Against Discrimination, 70 F.3d 1361, 1364 (1st Cir. 1995) (citing Garmon, 359 U.S. at 245). Section 7 of the NLRA protects employees' right to self-organization and collective bargaining. 29 U.S.C. § 157. Section 8 of the NLRA prohibits unfair labor practices. 29 U.S.C. § 158.

Certain exceptions to the NLRB's primary jurisdiction exist, however. Alternative causes of action are not preempted where (i) the conduct at issue is of only "peripheral concern" to federal labor policy, (ii) the conduct touches interests "so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, courts cannot infer that Congress has deprived the states of the power to act," or (iii) Congress has expressly carved out

such an exception to the NLRB's primary jurisdiction. Chaulk Services, 70 F.3d at 1364-65. Plaintiff brings his cause of action pursuant to two statutes: (i) Title VII and (ii) Mass. Gen. Laws ch. 151B. I will first determine whether Title VII provides a remedy that is exempted from the NLRB's primary jurisdiction, and I will then apply the same analysis to Mass. Gen. Laws ch. 151B.

**2. Title VII**

The Supreme Court determined in Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), that "the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement rather than supplant, existing laws and institutions relating to employment discrimination." Id. at 48-49. The First Circuit has interpreted Alexander as meaning that Congress intended Title VII "to provide employees victimized by retaliation or discrimination with an additional statutory right of action wholly independent of the [collective bargaining agreement]." Morales-Vallellanes v. Potter, 339 F.3d 9, 18 (1st Cir. 2003) (holding that plaintiff's allegations of discrimination and retaliation could allege causes of actions under both the collective bargaining agreement and Title VII).

Title VII does not, however, provide an alternative right of action for claims "which hinge on an unfair labor practice having occurred." Morgan v. Massachusetts General Hospital, 901 F.2d 186, 194 (1st Cir. 1990). The question before this court is thus whether plaintiff's claim hinges on an unfair labor practice having occurred, see id. (stating that "to permit appellant to use the general civil rights statutes to protest alleged unfair labor practices, would essentially render the NLRA nugatory"), or on a claim for sexual harassment and retaliation

independent of plaintiff's involvement in labor practices protected under the NLRA. See, e.g., id. (stating that "[c]learly, if an employee has engaged in expression against employer policies, even within the context or union activities, which violate the Civil Rights Act, such as discriminatory treatment of minorities or sexual harassment, and the employee alleges discharge for that expression, [Title VII] would be implicated for the narrow expression-related claims").

Defendant argues that plaintiff's claim essentially states that he was terminated in retaliation for filing and refusing to withdraw a union grievance. Plaintiff argues that his claim states that he was terminated in retaliation for refusing to enter into a romantic relationship with Ms. Vaupel. The parties dispute whether plaintiff was acting as the union representative when he filed a complaint about Ms. Vaupel's treatment of Mrs. Hawkins, and plaintiff's reference to himself as the union's "department delegate" in his deposition is not sufficient to contradict his numerous assertions elsewhere that Calvin Williams, rather than himself, was the union's delegate. The parties also dispute whether plaintiff's termination was due to his alleged attack of Ms. Vaupel, filing of the complaint on Ms. Hawkins' behalf, or refusal to respond to Ms. Vaupel's advances. Their filings do not resolve these disputes when viewed in the light most favorable to plaintiff. Plaintiff has met his burden of showing that whether this case hinges on an unfair labor practice is at least trialworthy. I find that a genuine dispute of material facts exists, and that I cannot at this time grant summary judgment as to whether the NLRA preempts Title VII in this case.

**3. Chapter 151B**

The Supreme Court has stated that state law claims are preempted by federal labor law if their resolution "depends upon the meaning of a collective-bargaining agreement." Lingle

v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988). As explained supra, defendant has not met its burden of showing that no genuine dispute of material facts exists over whether this case turns on an unfair labor practice. Furthermore, courts often look to Title VII when applying Mass. Gen. Laws ch. 151B. See, e.g., Modern Continental/Obayashi v. Massachusetts Commission Against Discrimination, 445 Mass. 96, 108 n.15 (2005). Those that apply Chapter 151B without reference to Title VII do so in order to interpret Chapter 151B *more* liberally, thereby permitting more claims than would be permitted under Title VII, see Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 536 (2001) (listing the court's reasons for not following the federal applications of Title VII in construing Chapter 151B). The listed reasons are "(1) the existence of material differences between our statutory scheme and the Federal Scheme...; (2) the legislative directive that G.L. c. 151B is to be applied liberally; (3) the express delegation of authority by the Legislature in G.L. c. 151B, §2, empowering the MCAD [Massachusetts Commission Against Discrimination] to act forcefully to implement the statute in order to eliminate discrimination at root level; and (4) the deference we have afforded to MCAD policies and decisions based on the authority granted the agency by the Legislature." Chapter 151B can thus be considered to provide a remedy independent from the NLRA when a claim under Chapter 151B does not hinge on the meaning of a collective bargaining agreement. Since a dispute exists over whether plaintiff's state law claim depends on his having filed a complaint as permitted by the NLRA, I will not grant summary judgment as to whether the NLRA preempts Chapter 151B in this case.

**C. Massachusetts Law**

**1. Introduction**

Defendant argues that plaintiff does not have a claim pursuant to Chapter 151B because Massachusetts law does not apply. A federal court considering supplemental state law claims "must apply the substantive law of the forum in which it sits, including that state's conflict-of-laws provisions." Dykes v. DePuy, Inc., 140 F.3d 31, 39 (1st Cir. 1998) (citing Klaxon v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496 (1941)). In determining choice of law, Massachusetts courts consider a variety of factors in order to determine which state has the most significant relationship to the transaction and the parties in a plaintiff's claim. Bushkin Associates, Inc. v. Raytheon Co., 393 Mass. 622, 631-34 (1985) (stating that Massachusetts does not apply a "simple and objective test" for determining choice of law).

Defendant claims that Florida has the most significant relationship because plaintiff signed the terms of engagement for his tour of duty in Florida, the ship was docked in Florida, Ms. Vaupel is a Florida resident, and the ship sailed from Florida to the Middle East and back to Florida. The alleged harassment took place while the ship was at sea. This argument ignores the fact that Massachusetts courts have stated that the purposes of Chapter 151B include "protect[ing] the citizens of the Commonwealth against employment discrimination," Charland v. Muzi Motors, 417 Mass. 580, 583 (1994), and that no "doubt [exists] that Massachusetts courts have the power to decide an employment discrimination controversy between a Massachusetts citizen and a Massachusetts employer whose headquarters is located in Massachusetts," Cormier v. Pezrow New England, Inc., 437 Mass. 302, 305 (2002) (finding that the Chapter 151B requirement that an action for discrimination be brought in the county in which the unlawful practice occurred even when plaintiff's discharge allegedly occurred in the Connecticut office of

the Massachusetts employer). Viewing the facts in the light most favorable to plaintiff, I find that plaintiff is a Massachusetts citizen, defendant has its principal place of business in Massachusetts, and plaintiff learned of, applied for, and was hired by defendant in Massachusetts. Together, these facts are sufficient to establish a genuine dispute over whether Massachusetts law applies in this case. I will not grant summary judgment in defendant's favor as to whether plaintiff may bring a suit pursuant to Chapter 151B.

**D. Retaliation Claims**

Defendant next argues that plaintiff fails to establish a prima facie case of retaliation under either Title VII or Chapter 151B. Title VII makes it unlawful for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3. Section 4(4) of Chapter 151B makes it unlawful for an employer to "discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under [Chapter 151B]." Mass. Gen. Laws ch. 151B, § 4(4). Under either statute, the plaintiff must show that (i) he undertook protected conduct, (ii) he suffered an adverse employment action, and (iii) the two were causally linked. Noviello v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005). Defendant does not challenge the first element, so I will assume without deciding that, for this analysis, plaintiff's complaints to the captain about Ms. Vaupel's advances constituted protected conduct. The question before me is thus whether plaintiff suffered adverse action as a result of his complaints.

Defendant contends that plaintiff's discharge was not a termination, but instead a resignation because, after plaintiff was initially terminated, he voluntarily agreed to convert his termination into a discharge by mutual consent. In order to be adverse, an employment action must materially change the plaintiff's employment. Blackie v. State of Maine, 75 F.3d 716, 725-26 (1st Cir. 1996). Material changes typically require the employer either to "(1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities,...or (2) withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service." Id. (internal citations omitted). The situation before me is different from that of a typical retaliatory discharge, however, because plaintiff agreed to convert his termination into a resignation. Although plaintiff contests the consequences of the conversion to a discharge by mutual consent, he does not contest the conversion itself. Assuming, arguendo, that plaintiff may be bound by the conversion agreement and that I should thus treat his release as a discharge by mutual consent, I decide that defendant still has not provided sufficient evidence to support a grant of summary judgment on this matter. The discharge notice provides only that, in exchange for a discharge by mutual consent, defendant will pay plaintiff's transportation costs and withdraw its charges against plaintiff before the SAB. This notice does not provide that plaintiff agrees not to bring separate charges against defendant. Plaintiff has therefore alleged sufficient facts to withstand a motion for summary judgment as to whether he suffered the adverse employment action, as is required to establish a prima facie case of discrimination. I therefore will not grant summary judgment on plaintiff's retaliation claims.

**E. Hostile Work Environment**

Defendant next argues that plaintiff fails to make the required showing for hostile work environment sexual harassment. In order to prevail on a claim of a hostile work environment under either Title VII or Chapter 151B, a plaintiff must show that (i) the conduct was sufficiently severe and pervasive to alter the conditions of plaintiff's employment, and (ii) the work environment was both objectively and subjectively offensive. Conto v. Concord Hospital, Inc., 265 F.3d 79, 82 (1st Cir. 2001); Muzzy v. Cahillane Motors, Inc., 434 Mass. 409, 411-12 (2001). These elements require a court to consider whether, in the totality of the circumstances, the alleged conduct is sufficiently severe and pervasive to interfere with a hypothetical reasonable person's work performance. Messina v. Araserve, Inc., 906 F.Supp. 34, 36 (D. Mass. 1995).

Plaintiff alleges that Ms. Vaupel stated on numerous times that she was interested in a "private relationship" with him, that she invited him up to her room, that she told him how she liked to make love and that she wanted to make love to him, and that she molded bread dough into the shape of a penis and asked plaintiff how he liked it. Ms. Vaupel was also in a supervisory relationship to plaintiff, which means that her actions may be construed as more offensive than the same actions by plaintiff's coworkers. See College-Town, Div. of Interco, Inc. v. Massachusetts Commission Against Discrimination, 400 Mass. 156, 166 (1987) (stating that "[a]lthough coworkers or even outsiders may also be capable of creating a sexually harassing work environment, it is the authority conferred upon a supervisor by the employer that makes the supervisor particularly able to force subordinates to submit to sexual harassment"). Although a reasonable person may not find Ms. Vaupel's actions to have been offensive, enough of a question exists as to whether Ms. Vaupel's actions are objectively offensive for me to leave this question to

a factfinder. See Messina, 906 F.Supp. at 37 (stating that whether defendants' name-calling and sexually suggestive gestures were pervasive enough to affect the work performance of a reasonable person in plaintiff's situation was a question for the factfinder).

A genuine dispute of material fact also exists as to whether Ms. Vaupel's actions were subjectively offensive. Although plaintiff responded to the doughy phallus incident by laughing, plaintiff contends that this laughter was meant to cover his discomfort. Furthermore, plaintiff states throughout his deposition that Ms. Vaupel's actions humiliated and embarrassed him to such an extent that he spoke with the captain about these incidents. To prevail on a claim of sexual harassment, the plaintiff must show that he subjectively perceived the environment to be abusive such that the conduct actually altered the conditions of his employment. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (stating that "Title VII comes into play before the harassing conduct leads to a nervous breakdown"). Plaintiff's responses to his supervisor's conduct indicate that her conduct was subjectively offensive and are therefore sufficient to survive a motion for summary judgment. I therefore will not grant summary judgment on the claims for hostile work environment sexual harassment.

**F. Quid Pro Quo Harassment**

Defendant's final argument is that plaintiff fails to make the required showing for quid pro quo sexual harassment. Quid pro quo harassment exists under Title VII "where a supervisor uses employer processes to punish a subordinate for refusing to comply with sexual demands." Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 52 (1st Cir. 2000). Under Chapter 151B, quid pro quo harassment exists only when a plaintiff demonstrates either

that (i) a supervisor "conditioned tangible benefits on submission to sexual demands" or (ii) plaintiff's "rejection of sexual advances was a basis for employment decisions." Dahms v. Cognex Corp., 12 Mass.L.Rptr. 486, *2 (Mass. Super. 2000).

In this case, plaintiff admits that Ms. Vaupel did not explicitly condition his continued employment on a positive response to her advances, but she did allegedly state that she intended to get even with him and Ms. Hawkins. See Hernandez-Loring, 233 F.3d at 54 (denying summary judgment and referring to defendant's boast that "he had caused [plaintiff's] denial of promotion because [plaintiff] had spurned him" as "one very potent fact in [plaintiff's] favor"). Plaintiff claims that, after he rejected Ms. Vaupel's advances, she falsely accused him of poor job performance, screamed at him, threatened him, and finally filed the allegedly false claim of assault against him. If I take all of these allegations as true, plaintiff has established a sufficient case of quid pro quo sexual harassment to withstand defendant's motion for summary judgment. See Lipsett v. University of Puerto Rico, 864 F.2d 881, 905-06 (1st Cir.) (stating that plaintiff established a prima facie case of quid pro quo sexual harassment when she "claimed that each man implied that she should have sex with him, a demand made even more explicit by the warning issued by [her colleague], who told the plaintiff that it was characteristic for a low level resident to keep a relationship with a high level resident or an attending [physician] in order to ease her way through the Program") (internal quotations omitted). I therefore do not grant summary judgment for defendant on plaintiff's claims for quid pro quo sexual harassment under Title VII and Chapter 151B.

**ORDER**

For the foregoing reasons, it is ORDERED:

(1) Defendant's Motion for Summary Judgment (Docket No. 21) is DENIED.

/s/Robert E. Keeton
Robert E. Keeton
Senior United States District Judge