UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

.....................................

LAWRENCE HOWARD, JR.,

             Plaintiff,       CIVIL ACTION NO. 04-11169(REK)

     v.

AMERICAN OVERSEAS MARINE
CORPORATION,

            Defendant.

.....................................

## DEFENDANT'S TRIAL BRIEF

The evidence at trial will establish that defendant American Overseas Marine Corporation ("AMSEA") did not retaliate against plaintiff Lawrence Howard ("Howard") in violation of Title VII or Massachusetts General Laws c. 151B for complaining that he was sexually harassed by Chief Steward Nancy Vaupel. The evidence will also establish that Howard was not sexually harassed by Vaupel in violation of either of those laws, through exposure to a sexually hostile work environment or quid pro quo harassment. Specifically, the evidence at trial will show the following:

On October 3, 2003, Captain Michael Mahoney terminated Howard from his position as Chief Cook on the M/V Button for his repeated insubordinate and disrespectful behavior toward, and assault of, Vaupel on October 1, 2003. Howard's actions on October 1, 2003 were consistent with the contempt that he displayed for Vaupel from the beginning of the ship's voyage when it left Jacksonville in early July 2003. Howard had joined the ship approximately one month earlier, working under Vaupel's predecessor, George Firth. Howard had no problems with Firth, whose job as Chief Steward was to oversee operations in the kitchen where Howard

B3141904.1

prepared food. Vaupel's arrival in relief of Firth, however, signaled a change in Howard's attitude, and he resented a woman supervising kitchen operations. Throughout the voyage with Vaupel, Howard repeatedly yelled at her to get out of the kitchen, sometimes using profanity. On one occasion, he referred to her in the presence of other crew members as a "stupid fucking bitch."

Howard's work attitude was affected by the contempt he openly displayed for Vaupel. On one occasion, Vaupel asked Howard to make hot sandwiches. Howard refused, even though his job description stated that he was responsible for making hot sandwiches. As a result of Howard's insubordination, Vaupel went to speak with the chief union representative on the ship, Bill Buchner. While in Buchner's office, Howard appeared and angrily said, among other things, that Vaupel did not know how to do her job and should not be Chief Steward.

Howard also resented Vaupel's supervision of Hawkins, with whom he had begun a relationship prior to Vaupel arriving on the ship. Hawkins reported to the M/V Button in early June 2003, and worked with Howard under Firth. Firth was less concerned with supervision of the kitchen crew than Vaupel, and when Hawkins was late for her shift, Firth did not discipline her. That changed when Vaupel started as Chief Steward, as Vaupel made it clear to Hawkins that she would not tolerate Hawkins arriving to work late. Hawkins responded by arguing with Vaupel. Thereafter, Hawkins continued to report to work late, and was issued a written warning by Vaupel on September 2, 2003. That next day, Hawkins and Howard complained to Captain Mahoney about the written warning and Vaupel giving Hawkins too much direction in her work.

In fact, Hawkins needed direction in her work because she was a poor performer and had a poor attitude. In addition to reporting to work late, Hawkins was rude to officers whom she was required to serve in the officers' mess, maintained a poor salad bar for the officers, failed to

complete job assignments and reported late for overtime assignments, after which she would seek pay for the entire assignment. When Vaupel spoke to Hawkins about workplace issues, Hawkins was argumentative and belligerent.

On September 14, 2003, Howard, who had been acting as the union representative for his department, filed with Vaupel a written grievance on behalf of Hawkins. The grievance raised several contractual issues. Although Howard testified in his deposition that by the time he filed the grievance he was at a "breaking point" concerning alleged sexual harassment by Vaupel, and that he was prompted to write the grievance in part because of the alleged sexual harassment, nowhere in the grievance does Howard mention sexual harassment. The grievance also fails to mention his prior alleged verbal complaints to Captain Mahoney of sexual harassment by Vaupel. In fact, the first time Howard ever raised any claim of sexual harassment was long after his termination when he was preparing to file a charge of discrimination with the Massachusetts Commission Against Discrimination.

By the time Howard had filed the September 14, 2003 grievance, Vaupel had curtailed her visits to the galley to avoid Howard. On October 1, 2003, however, she was in the galley and was again subjected to verbal abuse by Howard. The evidence will show that Howard was particularly vitriolic on this occasion, and was swinging his arms wildly as he yelled at her. As she turned and started to walk away from him, he grabbed her arm with enough force to stop her, and instructed her not to walk away from him while he was talking. He then yelled at her to stay the hell out of his kitchen.

Vaupel was scared and upset by the incident and reported it to Captain Mahoney. Mahoney determined that the incident warranted Howard's termination, particularly in light of Howard's prior insubordinate attitude toward Vaupel. Mahoney reported the incident to Rick

Williamson, Director of Labor Relations and Personnel at AMSEA, who agreed that he should terminate Howard. On October 3, 2003, Mahoney informed Howard that he was terminated for his repeated disrespect toward Vaupel, including the October 1, 2003 incident. Union Representative Steve Ruiz boarded the ship that day to meet with Howard and others. During his meeting with Howard, Howard became upset at Ruiz and threatened to slit Ruiz's throat with his razor blade. Had Howard not been terminated for the incident with Vaupel, he would have been terminated for threatening Steve Ruiz.

In summary, the evidence will show that Howard never reported to Captain Mahoney that he was being sexually harassed by Vaupel, and that Vaupel never sexually harassed him. Moreover, the evidence will establish that Howard was terminated for his October 1, 2003 assault on Vaupel, and not for any complaints that he was sexually harassed. Finally, even if the jury were to conclude that Howard's termination was retaliatory, Howard would not be entitled to any damages occasioned by the termination because he would have been terminated for his threat to Ruiz.

**Respectfully submitted,**

**American Overseas Marine Corporation**

By its attorneys:

/s Scott Merrill
James W. Bucking
BBO #558800
Scott C. Merrill
BBO #631008
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

January 4, 2005

B3141904.1                                    - 4 -