UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

...........................................
.
LAWRENCE HOWARD, JR.,                    .
.
                Plaintiff,   .   CIVIL ACTION NO. 04-11169 (REK)
.
       v.                             .
.
AMERICAN OVERSEAS MARINE    .
CORPORATION,                             .
.
               Defendant.   .
...........................................

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE REGARDING "SO-CALLED" AFTER ACQUIRED EVIDENCE

Plaintiff's Motion in Limine should be denied because the jury should be permitted to consider evidence that the Defendant (or "AMSEA") would have terminated Plaintiff for his threatening statement to Union Representative Steve Ruiz, had it not already terminated him for his threatening behavior toward his supervisor Nancy Vaupel two days earlier.[1] For the following reasons, Plaintiff's Motion in Limine should be denied:

1. Plaintiff's Motion in Limine is untimely. Plaintiff has been on notice that Defendant would be asserting the after-acquired evidence rule as a defense since

---

[1] Plaintiff's Motion does not seek to exclude testimony concerning the threat itself. Plaintiff's Motion states: "Plaintiff respectfully requests that the Defendant and its witnesses and attorneys be prohibited from submitted [sic] any evidence that the Defendant would have terminated the Plaintiff because of the alleged threat. . ." (Plaintiff's Motion at p. 2.) Indeed, as set forth in the Court's order dated January 4, 2003, Plaintiff has already stipulated that the videotaped deposition of Greg Williams -- which includes testimony about the threat -- will be shown to the jury in its entirety. In that deposition, Williams testified that Plaintiff stated to Ruiz: "'If I had a blade, I'd cut you right now,' words to that effect." (Exhibit A - Deposition of Greg Williams at 18:15-18.) Thus, the parties are in agreement that no challenge is being lodged against evidence concerning the threat, only against evidence that AMSEA would have fired Plaintiff for the threat if he was not already fired.

the Court granted Defendant's <u>unopposed</u> motion to amend its answer to include that defense on March 28, 2005. Plaintiff's opportunity to raise his Motion in Limine was in the Joint Pre-Trial Memorandum, and separately as a Motion prior to the filing of that Memorandum, as required by Local Rule 16.5. In discussions between counsel prior to the Joint Pre-Trial Memorandum, the issue was never raised. In the Pre-Trial Memorandum, drafted by Plaintiff, the issue was never raised. At the Final Pre-Trial Conference on January 4, 2006, the issue was never raised. Indeed, at no point prior to 10:00 a.m. this morning has Plaintiff ever articulated that he would seek to exclude evidence concerning that defense, or the defense itself, from the jury. Plaintiff's failure to raise the issue in a timely fashion violates the requirements of Local Rule 16.5, and Plaintiff has waived his right to bring this Motion.

2. In any event, Plaintiff is wrong on the law. Plaintiff's suggestion that <u>McKennon v. Nashville Banner Pub. Co.</u>, 513 U.S. (1995) bars the application of the after-acquired evidence rule where the conduct at issue occurred after Plaintiff was terminated is incorrect. It so happens that <u>McKennon</u> applied the after-acquired evidence rule in a case where the terminable misconduct took place prior to termination, unbeknownst to the employer. But the <u>McKennon</u> Court never said that the rule could not be applied in cases where the terminable conduct took place after termination. In fact, other courts have rejected such a rule. <u>See, e.g.</u>, <u>Sellers v. Mineta</u>, 358 F.3d 1058, 1064 (8th Cir. 2004) (after-acquired evidence rule may be applied in cases where the misconduct occurred after termination).

The Defendant is unaware of any First Circuit case that has held that the after-acquired evidence rule may not be applied to post-termination misconduct.

The Court should adopt the approach of the 8th Circuit, which best reflects the intent of McKennon:

> In determining appropriate remedial action, the employee's wrongdoing becomes relevant not to punish the employee, or out of concern 'for the relative moral worth of the parties. . .but to <u>take due account of the lawful prerogatives of the employer</u> in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing."

513 U.S. at 361. (emphasis added). The lawful prerogatives of AMSEA surely include the right to terminate an individual who threatens to cut the throat of a Union Representative, on board an AMSEA vessel, in the presence of AMSEA employees. It would be an inequitable result for the Plaintiff to be awarded front pay where his threat to Steve Ruiz would have resulted in his termination, had he not already been terminated earlier that day. Therefore, in assessing damages, the jury should be allowed to consider whether AMSEA would have terminated him for that threat.

3. Even if the Court were not to accept the 8th Circuit's approach to this issue, the after-acquired evidence rule should nonetheless apply in this case because Howard's threat to Steve Ruiz occurred in the context of the employment relationship and while that relationship was still very much alive. Plaintiff testified at his deposition that the Ruiz threat took place immediately after his meeting with the Captain in which he was given his discharge letter. (Exhibit B - Howard Deposition Transcript at 177.) When the threat occurred, the Plaintiff was meeting with Ruiz about employment issues, they were on AMSEA's ship, and it was before the Plaintiff had even cleaned out his room. Thus, the indicia of the employment relationship were still present at

the time of the threat. It would make no logical sense to have a rule saying that the exact same conduct occurring ten minutes prior to discharge (but discovered later) is proper to put before a jury, if the conduct cannot be put before the jury when it occurs five minutes after the discharge. In either case, if the jury were to find that the employer would have fired the employee based upon the new misconduct, reinstatement (as opposed to front pay in lieu of reinstatement) is equally unjustified. Accordingly, there is no basis to conclude that the after-acquired evidence rule does not apply.

      Accordingly, Defendant requests that Plaintiff's Motion in Limine be denied.

Respectfully submitted,

AMERICAN OVERSEAS
MARINE CORPORATION
By its attorneys,

/s/ Scott C. Merrill_____
James W. Bucking, BBO #558800
Scott C. Merrill, BBO #631008
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: January 5, 2006

# EXHIBIT A

```
 1   this guy is just going after a lawsuit against the
 2   company?"
 3              MR. WOOD:  Objection.  Hearsay.
 4        A.    I said, "Well, I have my suspicions, but no
 5   proof."
 6              Later on Howard came back in to pay his
 7   union dues, reached into his pocket, pulled out a
 8   few hundred dollar bills, two or three, whatever his
 9   dues were, threw them down on the table and said,
10   "Here you go.  Here's your union dues."
11              The union rep looked up at him and says,
12   "You know, with an attitude like yours, maybe you
13   should stay on the beach for about six months.  You
14   don't need to be out here sailing."
15              Howard at that point reached down, grabbed
16   the money back up and made a statement something to
17   the effect, "If I had a blade, I'd cut you right
18   now," words to that effect.
19              The union rep wrote up a statement, which I
20   witnessed along with Calvin Williams, who was also
21   there at the time.
22        Q.    Did you sign the statement?
23        A.    Yes, I did, along with Calvin Williams.
24              MR. BUCKING:  Thank you very much, sir.  I
```

# EXHIBIT B

1    A.    It had to happen while we were at sea.  I
2    can't tell you what date or day it happened, if it
3    was the day of arrival or a day or two days before,
4    but it did happen.
5    Q.    When you told Steve Ruiz that you were
6    going to slit his throat, did that happen before or
7    after you went to see the Captain?
8         MR. WOOD:  Objection.
9    A.    Shall I answer?
10        MR. WOOD:  Yes, you can answer.
11   A.    It happened after I had gone to see the
12   Captain.  I came back -- I saw the Captain on two
13   occasions in a very short period of time.  I came
14   back downstairs.  Mr. Ruiz said something to me
15   about my Union dues.  And I was going to pay it.  I
16   had some cash.  "You know, for you to be
17   representing me, I have a very serious problem with
18   you telling me you were called by the Company last
19   night to resolve something, and you're here
20   representing the Company's interest, as opposed to
21   my interest, Steve?  I don't understand that."  I
22   was angry, and I said to him, "You know, I'm pissed
23   off enough at you to go upstairs and get my razor
24   and put it around your neck."  I said that to him.