UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAWRENCE HOWARD, JR., <br>     Plaintiff <br><br> v. <br><br> AMERICAN OVERSEAS MARINE <br> CORPORATION, <br>     Defendant | CIVIL ACTION <br> NO. 04-11169-REK |

**Memorandum and Order**
January 9, 2006

### I. Pending Matters

Pending for decision are matters related to the following filing:

(1) Plaintiff's Motion In Limine Regarding So-Called After Acquired Evidence (Docket No. 43, filed January 5, 2006).

### II. Factual and Procedural Background

Plaintiff Lawrence Howard, Jr. was employed by defendant American Overseas Marine Corp. ("AMSEA") on a merchant marine vessel, the Motor Vessel Button ("Button"). Plaintiff was employed as the Chief Cook on the Button, where he was supervised by Chief Steward Nancy Vaupel and assisted by Steward Assistants, one of whom was Avis Hawkins. Plaintiff alleges that, as the Button sailed to the Middle East in mid-2003, during the early stages of the Iraq War, he was subjected to unwanted and offensive sexual harassment by Ms. Vaupel. Ms. Vaupel allegedly told plaintiff on numerous occasions that she was interested in a "private

relationship" with him. Her alleged sexual conduct toward plaintiff also included telling him that she liked making love under candles, stating that she wanted to make love to him in her bedroom, inviting him up to her room, and rolling a piece of bread dough into the shape of a penis and asking plaintiff how he liked it. Plaintiff alleges that this conduct led him to complain to Captain Michael Mahoney, who spoke with Ms. Vaupel about the incidents.

In order to stop Ms. Vaupel's advances, plaintiff told Ms. Vaupel that he was romantically involved with Ms. Hawkins. Ms. Vaupel then allegedly became critical of Ms. Hawkins and treated her in a disparaging manner. On September 14, 2003, plaintiff delivered a memorandum to Ms. Vaupel and Captain Mahoney regarding her treatment of Ms. Hawkins. Ms. Vaupel then allegedly stated that she intended to get even with plaintiff and Ms. Hawkins for their actions toward her.

On October 1, 2003, Ms. Vaupel reported to Captain Mahoney that plaintiff had hit her. On October 2, 2003, Captain Mahoney and Seafarers International Union ("SIU") representative Steve Ruiz allegedly requested that plaintiff withdraw the memorandum regarding Ms. Vaupel's treatment of Ms. Hawkins. On October 3, 2003, plaintiff was terminated. He then allegedly threatened to cut the throat of Mr. Ruiz, who responded by filing charges with the Seafarers Appeals Board ("SAB"). Defendant also filed charges against plaintiff before the SAB for the alleged assault of Ms. Vaupel. On November 10, 2003, plaintiff, defendant, and the SIU signed an agreement pursuant to which plaintiff's discharge would be by reason of mutual consent, defendant would pay plaintiff's transportation, and the charges before the SAB would be withdrawn.

Plaintiff alleges that the reasons proffered for his termination were false and a

pretext for unlawful discrimination and retaliation for his refusal to enter into a romantic relationship with Ms. Vaupel.  Defendant alleges plaintiff's termination was due to his assault on Ms. Vaupel and his previous disrespectful behavior toward her.  Plaintiff filed this action on June 2, 2004.  (Docket No. 1.)  He brings two counts, the first based on Title VII of the 1964 Federal Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000(e) et seq., and the second based on Mass. Gen. Laws ch. 151B ("Chapter 151B").  Both counts allege that plaintiff was subjected to discrimination on the basis of his sex that had the purpose or effect of unreasonably interfering with his work performance or creating an intimidating, hostile, or offensive working environment and that constituted quid pro quo harassment.  Both counts also allege that plaintiff was subjected to retaliation in violation of both laws.  Plaintiff demands compensation for his injuries, as well as punitive damages, interest, reasonable attorney's fees, and litigation costs.

Defendant filed its original answer on August 10, 2004.  (Docket No. 5.) Defendant then filed two motions to amend, both of which I granted.  (Docket Nos. 12 and 14.) Defendant's amended answer raises fifteen defenses: (1) defendant's denial of allegations; (2) plaintiff's failure to state a claim upon which relief may be granted; (3) plaintiff's failure to exhaust administrative remedies; (4) doctrine of accord and satisfaction; (5) defendant's good faith and legitimate business reasons; (6) plaintiff's waiver and/or release of claims; (7) defendant's actions were not the proximate cause of any injury; (8) plaintiff's estoppel by his own actions; (9) plaintiff's discharge was for cause; (10) plaintiff's failure to mitigate damages; (11) plaintiff's failure to state a cognizable claim under Mass. Gen. Laws ch. 151B; (12) doctrine of laches; (13) doctrine of unclean hands; (14) plaintiff's threats to a union representative aboard defendant's vessel; and (15) plaintiff's retaliation claims are preempted by the National Labor

Relations Act ("NLRA").

On June 9, 2005, plaintiff filed a Motion for a Protective Order, requesting that defendant and its counsel be prohibited from inquiring and otherwise seeking deposition testimony and other discovery from plaintiff concerning his previous administrative action against the National Railroad Passenger Corporation ("Amtrak"). (Docket No. 17.) I denied this motion at the hearing on October 4, 2005, and ordered plaintiff to produce his settlement agreement with Amtrak after defendant had given notice of production to Amtrak.

On October 14, 2005, defendant filed a Motion for Summary Judgment. (Docket No. 21.) I denied this motion on December 14, 2005. (Docket No. 28.) Both parties have submitted pretrial memoranda and trial briefs, and jury trial is scheduled to begin on January 9, 2006. On January 5, 2006, plaintiff filed his Motion In Limine Regarding So-Called After Acquired Evidence. (Docket No. 43.) On that same date, defendant filed its opposition to plaintiff's motions. (Docket No. 44.)

### III. Analysis

Plaintiff requests that this court issue an Order precluding defendant, its attorneys, and its witnesses from referring in any manner to or attempting to introduce any evidence concerning plaintiff's alleged threat to a union representative subsequent to his termination. Defendant argues that evidence concerning this threat is admissible because (i) plaintiff's motion is untimely, (ii) plaintiff errs in his application of the after-acquired evidence rule, and (iii) the evidence is relevant because the threat occurred in the context of the employment relationship between plaintiff and defendant. I do not find any of these arguments to be persuasive, and I rule

in plaintiff's favor.

As plaintiff himself admits in his deposition, after he was terminated, he said to Mr. Ruiz, "You know, I'm pissed off enough at you to go upstairs and get my razor and put it around your neck." (Docket No. 44, Exh. B.)  Defendant's first argument, that plaintiff should not be permitted to bring this motion because plaintiff did not oppose defendant's motion to amend its answer to include the evidence as a defense is without merit.  As I stated in the pre-trial conference on January 5, 2006, I will not permit procedural arguments to prevent this court from providing the most fair trial possible for both sides, and I thus will not permit defendant to prevent plaintiff from raising a valid objection merely because of the procedural posture of plaintiff's motion.

Defendant's second argument is also without merit.  Regardless of how either party chooses to interpret the after-acquired evidence rule referred to in McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995), I have determined that evidence regarding plaintiff's alleged threat is so prejudicial as to be inadmissible, as I will discuss below.

Defendant's third argument is also unconvincing.  Relevance is not sufficient to make evidence admissible when such evidence could create unfair prejudice or mislead the jury. See Fed. R. Evid. 403 (stating that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury").

Defendant appears to have two primary reasons for introducing or referring to the disputed evidence.  Defendant argues that it should be permitted to refer to plaintiff's alleged threat because it shows that, even if defendant had not terminated plaintiff when it did, plaintiff's

5

alleged threat would have given it a justifiable reason to do so.  According to defendant, this evidence is therefore admissible both to show alternative grounds for plaintiff's termination and to limit the front pay that jurors may potentially award plaintiff if they find defendant liable. Although this evidence may be relevant to the calculation of front pay damages, its admission at trial would be so prejudicial against plaintiff that I hold that it must be barred pursuant to Federal Rule of Evidence 403.  See, e.g., Sailor Inc. F/V v. City of Rockland, 428 F.3d 348, 355 (1st Cir. 2005) (stating that Rule 403 "gives the district judge ample discretion to exclude testimony where its probity is substantially outweighed by prejudice, confusion or the like").

The parties should note, however, that in limine rulings are recognized as provisional.  See United States v. Benedetti, WL 3502112, *5 (1st Cir. 2005) (quoting Ohler v. United States, 529 U.S. 753, 758 n.3 (2000) (stating that in limine "rulings are not binding on the trial judge [who] may always change his mind during the course of a trial")).  If, during trial, defendant presents evidence that convinces me that I should permit defendant to introduce evidence relating to plaintiff's alleged threat, I retain the ability to change my ruling during trial.

**ORDER**

For the foregoing reasons, it is ORDERED:

(1) Plaintiff's Motion In Limine Regarding So-Called After Acquired Evidence (Docket No. 43) is ALLOWED.

    /s/Robert E. Keeton
    Robert E. Keeton
    Senior United States District Judge